UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH DIVISION)
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:**<br><br>**THOMAS F KANE,**<br>        Debtor. | **Honorable Paul G. Hyman**<br>**Case No: 11-36816-PGH**<br>**Chapter 7** |
| **THE MANUFACTURERS LIFE INSURANCE COMPANY, and GERLACH (NOMINEE) & CO., L.L.C.,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**THOMAS F KANE,**<br><br>        **Defendant.** | **Adv. Pro. No. 12-_____-PGH** |

**COMPLAINT SEEKING: DETERMINATION OF NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523 AND DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727**

The Manufacturers Life Insurance Company ("Manulife"), and Gerlach (Nominee) & Co., L.L.C. ("Gerlach") (Manulife and/or Gerlach are also referred to herein as "Plaintiff"), by and through their undersigned counsel, by way of this Complaint seek the determination of nondischargeability of debt pursuant to 11 U.S.C. § 523 and denial of discharge pursuant to 11 U.S.C. § 727 against Debtor, Thomas F. Kane, ("Defendant" or "Kane"), and hereby state as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(A), (I), and (J).

2427430 v1

2. Venue is properly fixed in this Court pursuant to 28 U.S.C. § 1409.

3. This Adversary Proceeding is commenced pursuant to Rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and is a core proceeding within the scope of Rules 7001(4) and (6) to determine the dischargeability of certain debts owed by Defendant to Plaintiff pursuant to 11 U.S.C. § 523 and also seeking the denial of Debtor's general discharge pursuant to 11 U.S.C. § 727.

4. Plaintiffs timely commence this Adversary Proceeding to determine the dischargeability of the Defendant's debts and the denial of Defendant's discharge prior to the deadline, as extended by Orders of this Court, for the filing of this Adversary Proceeding.

## **PARTIES**

5. Manulife is a Canadian corporation with its principal place of business located at 200 Bloor Street East, Toronto, Ontario, Canada.

6. Gerlach is a Delaware limited liability company, whose sole member is Citibank, N.A., a national banking association located in South Dakota.

7. In litigation pending in the United States District Court for the District of New Jersey (the "NJ Litigation") at the time Defendant filed his bankruptcy petition, Defendant untimely sought to claim that Manulife lacked standing to pursue certain claims against Defendant and that Gerlach is the entity that can pursue such claims. Manulife disputes that it lacks standing, and Gerlach has stated that Manulife owns the claims against Defendant; Gerlach is included as a Plaintiff in this proceeding out of an abundance of caution to preserve any claims Gerlach may have.

8. Defendant is a Florida citizen and resides at 13839 Le Mans Way, Palm Beach Gardens, Florida.

2427430 v1

9. On September 28, 2011 (the "Petition Date"), Defendant filed a petition for relief ("Petition") pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy case (the "Bankruptcy Case").

10. Plaintiff is a creditor of Defendant. Defendant indicated Manulife is a creditor on the schedules he filed in the Bankruptcy Case.

## BACKGROUND

11. Plaintiff holds claims against Defendant which prior to the Petition Date were being litigated in the NJ Litigation.

12. Such claims are based upon three (3) promissory notes executed by Defendant in 1995 (collectively, the "Notes"), upon which Defendant currently owes Plaintiff more than $13 million.

13. Pursuant to a Pledge Agreement (the "Pledge Agreement"), Defendant pledged his 24% limited partnership interest in Adare Partners LP ("Adare") to secure his obligations under the Notes.

14. Adare was formed by Defendant, and owned "Adare Manor Resort," a golf resort and residential development located in the Nation of Ireland. Adare was essentially a family-owned (by the Kane family) and controlled entity. Thomas F. Kane, Inc. ("TFKI") is the corporate general partner of Adare (TFKI was 100% owned by Defendant through 2006, when Defendant then transferred 50% to his spouse, Judy Kane, without consideration). Defendant and Judy Kane served as two (2) of TFKI's three (3) board members at the relevant times, and also were two (2) of the three (3) members of Adare's self-described "Management Team" which determined and approved all payments and distributions by Adare. Defendant has admitted that the third director (who was also the third member of the Management Team) did not participate in decisions concerning payments.

3

15. TFKI owns 11% of Adare. When the Notes and Pledge Agreement were executed, Defendant and Judy Kane each owned 24% of Adare, but thereafter were improperly and purposefully diluted to approximately 15% and 17%, respectively (. Kane family members currently own, directly or indirectly, a total of about 65% of Adare. Institutional and other investors have held limited partnership interests in Adare at certain times.

16. In March 2010, Adare transferred half of its land and the resort to Adare Manor L.P. ("Adare Manor") -- whose ownership is identical to that of Adare--, seeking to isolate a large part of Adare's debt in the former entity. Defendant admitted that any rights Plaintiff has with respect to Adare also apply to Adare Manor.

17. In August 2011, Defendant supposedly agreed to resign from the board of TFKI. Adare and TFKI are now supposedly run primarily by Gerard Cosgrove (Defendant's son-in-law) with oversight by the other board members (including Judy Kane, who has not resigned); although, Defendant still maintains his ownership interests in Adare and TFKI (the general partner of Adare).

18. Despite Defendant's execution of the Notes and Pledge Agreement, between 2004 and 2008 Defendant and Judy Kane, in an effort to avoid the payment to the Plaintiff, paid themselves over $8 million from the assets of Adare -- most of which was paid to Defendant and none of which was paid to Plaintiff.

19. The parties to the NJ Litigation recognized that Defendant is liable for payment of the amounts that Defendant took or was entitled to from Adare that should have been paid to Plaintiff, and is also liable to Plaintiff for the interest in Adare pledged by Defendant to Plaintiff as security for payment of the Notes.

**Defendant's Willful, Malicious and Fraudulent Acts Deprived Plaintiff of Payment**

20. Pursuant to the terms of the Pledge Agreement, Defendant was required to turn over to Plaintiff proceeds and payments to which Defendant was entitled by virtue of his 24% pledged limited partnership interest in Adare, and is liable to Defendant under the Notes for all amounts he received from Adare.

21. By virtue of Defendant's pledged interest in Adare, Defendant was entitled to 24% of the total of all distributions and other payments made by Adare to any partners in Adare, except to the extent that payments to other partners were earned for services performed or were otherwise appropriate for some legitimate purpose.

22. Among other things, Defendant and Judy Kane (as the persons who admittedly controlled all payments by Adare) disguised payments from Adare to try improperly to avoid Defendant's obligation to pay Plaintiff distributions on account of his limited partnership interest in Adare. For example, rather than have Defendant take distributions owing to Defendant based on his limited partnership interest (which was subject to Plaintiff's security interest), Defendant and his spouse Judy Kane instead improperly characterized the payments as remuneration for services rendered by the general partner TFKI (owned by Defendant and Judy Kane) even though neither Defendant nor Judy Kane (the only employees of TFKI) ever declared on their tax returns any wages for any such services.

23. Defendant also ceased taking meaningful distributions from Adare after litigation with Manulife commenced in December 2006 in Delaware (even though Adare's books and records indicate the distributions were declared and owing to Defendant). However, until Judy Kane was sued, Defendant arranged for improperly large payments to Judy Kane (e.g., in 2007, Defendant and Judy Kane paid Judy Kane $1.7 million from Adare while Defendant took only a

5

$67,000 distribution, notwithstanding that Defendant and Judy Kane had similar ownership interests in Adare).

24. Among other things, Defendant also arranged for excessive payments (in excess of ownership interests) to be made by Adare to TFKI and to other Kane family members (including excessive payments to Defendant's daughters and over $2 million that Defendant transferred to his son Tom Kane Jr.'s Aegis company).

25. In connection with the issuance and subsequent repurchase of what was characterized as "Class D" partnership interests in Adare, Defendant also purposefully diluted his limited partnership ownership interest in Adare from 24% to 15.4% while Defendant's family members' and others' limited partnership interests in Adare were increased to the material detriment of the Plaintiff.

26. Defendant's assets were also purposefully reduced substantially through Adare's distribution of payments and proceeds made to Judy Kane and others in amounts disproportionate to their interests in Adare, and for other inappropriate purposes unrelated to any services performed by the recipients, and not otherwise appropriate for any legitimate purpose.

27. Adare also made distributions to Defendant which Defendant willfully failed to tender to Plaintiff.

28. Adare also made distributions and other payments to TFKI (and possibly to Judy Kane and to others), which were in turn distributed to Defendant by virtue of his limited partnership interest in Adare, which Defendant also willfully did not tender to Plaintiff.

29. Defendant intentionally and willfully withheld the amounts that should have been paid to Plaintiff, as well as information concerning these amounts, in contravention of the Pledge Agreement and Notes and in order to defraud Plaintiff.

30. The assets which Defendant mischaracterized or otherwise improperly transferred could have been used to meet Defendant's liabilities, including Defendant's payment obligations to Plaintiff.

**Defendant's Acts of Concealment And Failure To Produce Records And Valid Explanations Regarding His Assets**

31. Notwithstanding extended litigation in federal court in the NJ Litigation (the NJ Litigation was virtually on the eve of trial when Defendant filed his bankruptcy Petition), and notwithstanding his obligations in this Bankruptcy Case, Defendant still has failed to account fully for his assets.

32. Among other things, Defendant has failed to account for millions of dollars of payments from Adare to himself and his spouse (reflected on their joint tax returns), failed to identify or document the source of other transfers totaling well over $1 million into their accounts, failed to identify or document the accounts that received transfers totaling well over $1 million from their accounts, and failed to explain the basis for numerous intra-family transfers. By way of non-exclusive example, the joint tax returns of Defendant and Judy Kane show they received over $8 million from Adare between 2004 and 2007, but Defendant and Judy Kane have willfully refused to produce bank records (or other financial records) that account for receipt and disposition of these significant monies ($8 million).

33. Defendant filed his bankruptcy schedules on October 24, 2011, and thereafter responded to discovery requests. The schedules and discovery responses contain a number of inaccuracies, including inaccuracies both with respect to the characterization of Defendant's debts to Plaintiff and others, and with respect to other statements.

34. In the Bankruptcy Case, Plaintiff noticed a Rule 2004 examination of Defendant and served extensive document requests.

7

2427430 v1

35. At his Rule 2004 examination, Defendant admitted various false statements on his bankruptcy schedules, as well as discovery responses, and has still failed to correct them. See, e.g., Rule 2004 Exam transcript at 238:9-240:16; 354:2-357:3, 399:17-410:1, 442:4-443:3, 451:6-457:7, 458:17-461:21, 461:22-463:24, 491:2-492:15, 513:23-514:16.

36. Plaintiff participated actively in the sessions of Debtor's 2004 examinations (questioning Debtor for the better part of two of the three days of Debtor's Rule 2004 examination). Plaintiff also repeatedly requested additional documentation from Debtor concerning Debtor's assets and the disposition of same. Only bit-by-bit has Debtor dribbled out still incomplete financial information and documentation in response to repeated detailed written requests from Plaintiff. Moreover, Defendant often supplied documents solely to the Trustee and not to Plaintiff (improperly seeking to declare the documents confidential from review by Plaintiff).

37. Similarly, throughout the discovery process in the NJ Litigation, Defendant also repeatedly failed to comply with his discovery obligations. The Court in the NJ Litigation was forced to order production by Defendant regarding essentially the same discovery requests three (3) times regarding financial and other information. Defendant filed his bankruptcy petition in September 2011 following preparation of an extensive joint pretrial order (with impending summary judgment and trial deadlines) as discovery was still outstanding and being discussed in regular conference calls with Magistrate Judge Shipp, who was overseeing discovery in the NJ Litigation.

38. Defendant's bankruptcy filing did not alter his long history of offering only bits of information of his own choosing, rather than the full disclosure required of him.

2427430 v1

39. Among other things, Defendant still has not produced his 2 2011 tax returns nor numerous historical and recent account statements.

40. Based upon the answers and documents provided by Defendant in response to Plaintiff's requests, it is also apparent that Defendant failed to produce, maintain or preserve adequate records regarding his finances and business transactions.

41. For example, Defendant's records, that have thus far been begrudgingly produced, reflect receipt and disbursement of significantly fewer assets than Defendant's tax filings show were received from Adare. Defendant also failed to explain or provide complete bank account statements and other records regarding significant deposits, withdrawals and transfers of funds which apparently came from his accounts and/or Judy Kane's accounts.

42. As a result, it is impossible for Plaintiff to ascertain Defendant's financial condition or business transactions. Among other things, Defendant's failure to account warrants concern that Defendant and/or Judy Kane have additional undisclosed accounts.

43. Defendant has not set forth any valid justification for his failure to maintain and preserve adequate records reflecting his financial condition or business transactions.

44. Moreover, what Defendant characterized at his Rule 2004 examination as "Judy Kane's accounts" in fact rather appear to have been funded by Defendant, and Defendant was also a record co-owner of these accounts.

45. Defendant also failed to produce to Plaintiff sufficient documentation regarding his loan of $200,000 to Tom Kane Jr. or the status of that loan. Defendant also failed to produce to Plaintiff sufficient documentation regarding the "investment" of about 1.8 million euros (over $2 million) of Adare funds in Tom Kane Jr.'s Aegis companies. Defendant testified that the 1.8 million euro obligation remains outstanding, but the current status of those funds is unknown.

46. Defendant also failed to produce to Plaintiff sufficient documentation regarding the transfer by Defendant and Judy Kane of significant funds to their adult daughters, Linda Kane and Diane Kane, without any consideration.

47. Defendant failed to retain or provide not only personal records relating to his financial condition and transactions, but also records relating to actions taken by TFKI and Adare which resulted in purposefully excessive payments by Adare to Judy Kane, Defendant's children and others – all designed to avoid payment to Plaintiff.

48. Defendant is a person in control of TFKI, which is the general partner of Adare. TFKI and Adare are thus insiders of Defendant, as defined in Section 101(31)(A) of the Bankruptcy Code.

49. Furthermore, Defendant is owed money not only by Adare, but also his relatives, including his son and daughters, who are all insiders of Defendant as defined in Section 101(31)(A) of the Bankruptcy Code. The debts incurred by these insider entities all were incurred in connection with the various transactions resulting in the distribution of payments and proceeds by Adare to persons other than Defendant and the diminution of Defendant's Pledged Interest in Adare.

50. Defendant has failed to retain or provide records relating to these actions or satisfactorily explain such transactions in his Rule 2004 examination and other documents requested by Plaintiff related to the Bankruptcy Case.

51. In his Rule 2004 examination, Defendant agreed to produce all of his and Judy Kane's account information, and to explain any issues regarding their finances. However, notwithstanding three (3) sessions of his Rule 2004 examination, Defendant has still failed to

2427430 v1

produce all relevant financial information notwithstanding extensive correspondence from Plaintiff detailing what information is missing.

52. The assets for which Defendant has failed to account could have been used to meet Defendant's liabilities, including Defendant's payment obligations to Plaintiff.

## COUNT I - OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

53. Paragraphs 1-52 are herein reaverred and realleged.

54. 11 U.S.C. § 523(a)(6) provides, in relevant part, that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

55. Debtor diverted millions of dollars in payments that should have been made to Plaintiff to himself and his family members by, among other things, fraudulently mischaracterizing the nature of those payments.

56. By reason of his aforesaid acts including, without limitation, Defendant's control of TFKI and Adare, Defendant intentionally, willfully, and maliciously interfered with Plaintiff's right of possession to the pledged limited partnership interest in Adare and Plaintiff's right to proceeds and payments to which Plaintiff was entitled by virtue of the Pledge Agreement. The acts by Debtor with regards to the intentional diminution in value of the ownership interest in Adare, the diversion of the Adare assets and the diversion of the proceeds and reconstitution of the monies paid to Judy Kane and others was done with the intent to cause financial harm to the Plaintiff.

57. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer injury.

11

58. Defendant's willful and malicious conversion of proceeds and payments to which Plaintiff was entitled is sufficient to bring Defendant's conduct within the provisions of 11 U.S.C. § 523(a)(6).

59. For the foregoing reasons, it is respectfully requested that the Court should determine that Defendant's debts to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523.

**WHEREFORE**, Plaintiff prays this honorable Court to exercise its power pursuant to 11 U.S.C. § 523 and declare that debts owed from Defendant to Plaintiff are nondischargeable, grant Plaintiff attorney's fees and costs, and grant any other and further relief the Court deems just and proper.

### COUNT II – OBJECTION TO DISCHARGE OF DEBTOR PURSUANT TO 11 U.S.C. § 727(a)(3)

60. Paragraphs 1-52 are herein reaverred and realleged.

61. 11 U.S.C. § 727(a)(3) provides in relevant part, that the Court shall not grant a discharge where the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

62. Defendant's aforesaid acts fall within the provisions of 11 U.S.C. § 727(a)(3), and Debtor's discharge must be denied.

WHEREFORE, Plaintiff prays this honorable Court to exercise its power pursuant to 11 U.S.C. § 727(a)(3) and deny Debtor his general bankruptcy discharge, and grant any other and further relief the Court deems just and proper.

2427430 v1

**COUNT III – OBJECTION TO DISCHARGE OF DEBTOR PURSUANT TO
<u>11 U.S.C. § 727(a)(4)</u>**

63.     Paragraphs 1-52 are herein reaverred and realleged.

64.     11 U.S.C. § 727(a)(4) provides in relevant part, that the Court shall not grant a discharge where the debtor knowingly and fraudulently, in or in connection with the case:

>   (A)     made a false oath or account;
>
>   (B)     presented or used a false claim;
>
>   (C)     gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
>   (D)     withheld from an officer of the estate entitled to possession under the Bankruptcy Code, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

65.     Non-exclusive examples of such false oaths are that Defendant admitted various false statements on his bankruptcy schedules, as well as discovery responses, and has still failed to correct them, as noted in Defendant's Rule 2004 Exam transcript at 238:9-240:16; 354:2-357:3, 399:17-410:1, 442:4-443:3, 451:6-457:7, 458:17-461:21, 461:22-463:24, 491:2-492:15, 513:23-514:16.

66.     Defendant's aforesaid acts fall within the provisions of 11 U.S.C. § 727(a)(4), and his discharge must therefore denied.

WHEREFORE, Plaintiff prays this honorable Court to exercise its power pursuant to 11 U.S.C. § 727(a)(4) and deny Debtor his general bankruptcy discharge, and grant any other and further relief the Court deems just and proper.

2427430 v1

## COUNT IV – OBJECTION TO DISCHARGE OF DEBTOR PURSUANT TO 11 U.S.C. § 727(a)(5)

67. Paragraphs 1-52 are herein reaverred and realleged.

68. 11 U.S.C. § 727(a)(5) provides in relevant part, that the Court shall not grant a discharge where the debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities.

69. Defendant's aforesaid acts fall within the provisions of 11 U.S.C. § 727(a)(5) and Debtor's discharge must therefore be denied.

WHEREFORE, Plaintiff prays this honorable Court to exercise its power pursuant to 11 U.S.C. § 727(a)(5) and deny Debtor his general bankruptcy discharge, and grant any other and further relief the Court deems just and proper

                        Respectfully submitted,

                        *Counsel for Manulife/Gerlach*

Dated: January 17th, 2013

By: _____/s/_____
James B. Miller
James B. Miller, P.A.
19 West Flagler Street, Suite 416
Miami, FL 33130
Phone: (305) 374-0200
Fax: (305) 374-0250
jbm@title11law.com
Florida Bar No. 009164

*-and-*

By:____/s/_____
Darren H. GoldsteinFlaster/Greenberg P.C.
(PRO HAC VICE ADMISSION)
1810 Chapel Avenue West
Cherry Hill, N.J. 08002
Phone: (856) 661-1900
Fax: (856) 661-1919
Darren.goldstein@flastergreenberg.com

2427430 v1